This is our third case, Beazer East v. Mead Corp. May it please the court, my name is Dale Stephenson. I'm a partner with Squire Sanders and Dempsey representing the interlocutory appellant here at the Mead West Vaco Corporation. I'm here today with Van Carson and Alan Kassinger from Squire Sanders as well as Mead West Vaco's deputy general counsel, Joe Hutchison. With court permission, I'd like to reserve five minutes for rebuttal. This appeal presents a fundamental question. When must courts apply intervening Supreme Court authority? The answer is straightforward. Intervening Supreme Court authority has to be applied to live claims but cannot reach those claims that are already there. Let me ask you at the outset the concept of intervening Supreme Court authority. Didn't the Supreme Court merely say that the statute here means what it says? The statute says during or after civil action under 106 or 107. The contention could always have been made that the liability is limited because the statute says during or after civil action. All the Supreme Court said was statute says during or after civil action. It has to be during or after civil action. So I don't know why Supreme Court statement is somehow intervening. I will fundamentally agree with you because I am in fact the attorney for Cooper Industries that prevailed on the issue saying that's what the statute said. This court in DuPont said it fundamentally changed the landscape of CERCLA contribution claims and I think that's the same claim that Beezer has made in this case. We have two very different things. Beezer asserted both kinds of claims from the outset of this case. Count one was for direct cost recovery under section 107A of CERCLA to seek to pose joint and several liability for all the costs incurred. Section two is a claim for derivative contribution under section 113F1. The 107 claim was directly dismissed by the district court 11 years ago and Beezer didn't appeal from that decision. But why are you not foreclosed because when there was a motion for summary judgment you could have contended somewhere along the way that because this aspect of 113 wasn't fulfilled you weren't liable under 113 and yet that contention was not made. Meade in fact made that direct claim to the district court. You made the claim but then when the district court entered judgment you didn't raise that as an issue on appeal. Well, a little bit of context helps here between what happened with the magistrate judge and the district judge in this case. The magistrate judge took on the case the question of the 107 claim and the 113 claim. It found that Beezer could proceed under 107 for a direct cost recovery claim. Therefore it expressly declined to address the 113F1 issue. It expressly recognized that Beezer sought to have resolution of the question of whether you had to have a prior CERCLA 106 or 107 civil action before you could have a 113F1 claim. It simply said we don't need to get to that issue. When the judge took the magistrate's report and recommendation he reversed completely. He said Beezer cannot pursue a 107 claim. Recognized that that is not settled law in the 3rd circuit or by the Supreme Court but we'll leave them to pursue a 113F1 claim. It recognized that the only holding in this case had been that Meade was a liable party under section 107A. That is it was an owner or operator at the time of the disposal of a hazardous substance. Beezer never sought a determination on the 113F1 statutory prerequisites and Meade sought the opposite resultant summary judgment. Wait a minute. In July of 1996 the court allowed, the district court allowed a 113 action. And then the matter proceeded to allocation of costs and as a final judgment entered in the amount of $3 million you appealed and you did not raise any question about the liability issue. What we appealed was what we could see from the record and again we have a referral to the magistrate. This court has already found it was an invalid. No, no, I'm talking about, let's get down to the basics. Certainly. The district court found liability against you, entered a judgment against you and you appealed. You did not raise the liability issue at that point. The only issue you raised was the manner of determining the damages. Well, we appealed the entire proceeding. Isn't that correct? Isn't that a waiver of your claim that there's no liability? Absolutely not. What we appealed was the bad referral to the magistrate. It was a final judgment you appealed now. Correct. Right. And that final judgment was only the result of the fruit of the poison tree of an invalid referral. The procedural matter was what the court decided to send a fact off. It reversed the judgment of the court. Because of a procedure in determining damages. Nothing about liability. It reversed this case to the point where there was a bad referral. At that point in this case, there was no finding of the determination of the statutory prerequisites under Section 113F1. We are now back to the point of trial. No, no, you're not back to the point of trial. You're back for a remand on damages only. We are back to the point where this case went astray and went to a wrong result. Well, let's put it another way. If not then, then when? I mean, if you were not to raise it at that point on appeal, then when do you think you should have raised it or could have raised it? We appealed the entire bad judgment that resulted from the bad referral and the bad things that happened. And I believe we took a hard look at the opinions to find out if there had been resolution of this. And part of the problem is there's confusion about what went on or which issues were being addressed. The statutory prerequisites of 107A, record costs versus surplus costs, the statutory criteria of 113F1, or the ability. No, Mr. Stephenson, I looked at the brief, the headline of the content of your brief when you filed for that $3 million judgment, and it says nothing there about liability. You have five separate points. Nothing about liability. All on the delegation to the magistrate, polluter pays, principal, appropriate rates allocating liability between these and me for purposes of the judgment. I made this approximately 90% response. It doesn't contest the 113 ruling at all. We believe we appealed the judgment and brought it back to where it should be before the bad referral. But beyond that point, this is such a fundamental flaw on the face of the pleadings post the Cooper versus Aviol decision that this is a subject matter, jurisdiction matter as well, which can come up at any point in the proceedings. That was made completely clear in the Oneida Indian Nations and Steel Company cases, that if a claim becomes insubstantial, implausible, foreclosed by a prior decision of the Supreme Court, or otherwise devoid of merit, it lacks subject matter and jurisdiction. And that point can come up at any time in the proceeding. We've raised it. We raised it as soon as it went back to the district court for the motion for judgment on the pleadings and for lack of subject matter and jurisdiction. Absolutely. And I would point this court, if there's one case you should look at on that point, it would be the distinction from the Arbaugh decision. And this court has found that you have to have a colorable claim. Most recently in the Metropolitan Life decision, just issued on September 4, 2007 from this court, when a claim becomes so insubstantial or implausible or foreclosed by the prior decisions, it's completely devoid of merit and it no longer has subject matter and jurisdiction. That's the same kind of issue that was addressed previously in the Nesbitt v. Geers case. Judge Nygaard, you were on that panel, and you found that the standard, where something is facially deficient from the pleading, that you're deprived of subject matter and jurisdiction when the Supreme Court has made a clear standing that you can't have a valid claim. Here you'd be suggesting that we should go back and try a case solely on the claim. The only claim remaining in this case is a claim that has been directly foreclosed by the United States Supreme Court. This court's bound to follow U.S. Supreme Court authorities just as much as the district court below here. It's facially deficient under the Cooper standard on the pleadings. Let me back up. You just mentioned Arbaugh. Arbaugh really doesn't help you, does he? Yeah. The distinction is Arbaugh. Arbaugh made the separation when you have something that's just a matter of a claim. The Arbaugh standard is quite different. It's a factual question of whether there are 15 employees. There are disputes about the Title VII prerequisites here. Yeah, but the court said that if the legislature clearly states a threshold limitation on the scope, should count as jurisdictional, then that should be followed. But when Congress doesn't rank a limitation on coverage as jurisdictional, the court should treat it as non-jurisdictional in character. Right. And Title VII creates jurisdiction in its provision for any action brought under the statute of Title VII. In contrast, CERCLA only provides jurisdiction when there's a controversy arising under the statute. Facially here, you have absolutely no controversy that these can satisfy the statutory prerequisite that have brought a claim during or following a civil action under Section 106 or Section 107. Now, you bring up the civil action case. Is an enforcement action by an administrative agency a civil action? No. That is the position that the Supreme Court took is that it's civil action. The position that the Supreme Court took is that civil action has its normal meaning. It means a lawsuit. Where did it say that? I thought they especially reserved the issue of whether an administrative enforcement action could be a civil action. They reserved the issue of whether a unilateral enforcement order under Section 106 of CERCLA would qualify because it wasn't presented to them in the case. There's no question here that Mead had or that Beezer had any action under CERCLA. It's admittedly a record claim, a different statutory provision. Okay. All right. We have heard from you sufficiently here in the rebuttal. Thank you. Thank you. May it please the court, my name is Matt Jamieson on behalf of Apelli Beezer East Incorporated. In Beezer 2, this court remanded this case to the district court with specific instructions to conduct, quote, a new equitable allocation hearing. Beezer is asking this court for that same result today, either by affirming the district court's decision that Mead has waived its right to re-argue the civil action issue under 113F or by remanding this case as a result of Beezer's now viable claim under Section 107, following the Supreme Court's recent decision in Atlantic Research. To begin with, I would like to initially discuss the subject matter jurisdiction issue that was addressed by Mead. This court clearly has subject matter jurisdiction over Beezer's claims. As Judge Wise just indicated, the issue of whether an administrative order equates with a civil action was specifically left open in footnote 5 in Cooper. That issue is clearly before the district court. Furthermore, there is not, as we stand here today, a final judgment regarding Beezer's 107 claim, which clearly was pled and remains in this case, despite the fact that summary judgment was granted on it. And that touches Judge Wise's point from an earlier argument today. There was no Rule 54B motion, and the district court did not sua sponte turn that summary judgment into a final order. Going back to 1993, there was a district court ruling against your 107 position, and there was an appeal that you took from the indemnity ruling. Your Honor, with all due respect, in 1993, the court ruled in Beezer's favor on the 107 issue, but ruled against Beezer on the contractual indemnity issue. They ruled in your favor on 107? I thought it was later on. It was 1996. Correct, Your Honor. That they dismissed 107. Correct, Your Honor. And that dismissal, I think it's important to note, was not, by any stretch, a dismissal on the merits. It was a dismissal based on the district court's belief that Beezer's 107 claim was simply duplicative of its 113 claim. Specifically, the district court noted that Beezer failed to articulate any additional relief that it would be entitled to under 107 that it would not be entitled to under 113. Based on those viable claims and the decision in Arbaugh, we believe that it is clear that this court has subject matter jurisdiction over this case, which is consistent with the fact that Mead failed to bring Cooper to this court's attention in the six-month period after Cooper was decided and before this court rendered its opinion in Beezer 2. Clearly, if this court did not have subject matter jurisdiction, if Mead believed that, they should have brought it to this court's attention. Nor did they bring it to the attention of the United States Supreme Court when we filed our petition for cert. Moving on to the waiver issue, an issue in Mead's appeal is a fundamental question impacting the administration of justice. Should a district court reopen an earlier unappealed decision based on a recent decision in another case? Beezer believes that the answer to this question is no. When Mead was ruled to be liable on Beezer's contribution claim, which is clearly under 113, because even according to Mead, they acknowledge at the time the final judgment was entered, the only claim available for the district court to enter its judgment on was section 113. So there is no doubt that the district court ruled that the civil action prerequisite was satisfied. We go back and forth in our briefs wordsmithing both the magistrate's report and recommendation and the district court's ultimate memorandum order in 1996, but this court should not lose sight of the fact that that final judgment was entered upon Beezer's 113-F1 claim. So clearly, to the extent that Mead wanted to raise the civil action issue, they were obligated to raise that precise issue when they filed their appeal in Beezer 2. In Beezer 2, this case clearly remanded this case back to the district court on the very precise point that the wrong entity conducted the equitable allocation hearing. This court ruled that the magistrate judge did not have the authority to hear that claim. Rather, it had to be heard by the district court. Was there any other issue on appeal in Beezer 2 other than the authority of the magistrate? Is that the only thing on appeal? That was the only thing decided. Anything else on appeal? The only other thing, Your Honor, and it's touched on at the end of Beezer 2, is the declaratory judgment aspect. Mead also raised complaints regarding the specific factors that the magistrate judge considered in conducting the equitable allocation hearing. But as Judge Wise indicated, that related purely to the equitable allocation of damages in that case. Now, based on that remand, and Mead acknowledged in their principal argument that they made the exact civil action argument on remand following Beezer 2 that they made in their recent motion to dismiss. And as I indicated, clearly Mead's motion was denied. And the district court, by ultimately entering judgment, found that all the 107 prerequisites necessary to satisfy a 113 claim had been satisfied. Mead clearly elected not to challenge that ruling in Beezer 2. They had every opportunity to challenge the ruling, but they failed to do so. What do we do with that? What we do with that is we term that waiver, exactly as this court did in U.S. v. Paltrow, where Judge Nygaard was on that panel. This court held that because the defendant's allegations of error could have and should have been raised in the initial appeal, the defendant had waived his right to raise those issues in a later appeal. It's very similar to the approach that the 11th Circuit took in the U.S. v. Ardley decision cited in our brief. In that case, the court, in an interesting rationale, set forth the issue confronting the court, and that was that the intervening decision doctrine either trumps the procedural default doctrine, which this circuit typically refers to as waiver, or it does not. The 11th Circuit concluded that it clearly does not. They did not look at the underlying merits in that case. And that's a significant distinction because in that case, it was a criminal case. You had somebody sitting in prison, arguably because the district court had erred. And when that case was remanded by the U.S. Supreme Court, specifically with instructions by the U.S. Supreme Court that the 11th Circuit should take another look at that case in light of a recent Supreme Court decision, the 11th Circuit said, well, we can't look at the merits of this because the defendant failed to preserve that issue. And if you don't provide teeth to those procedural safeguards, the system falls apart. The 7th Circuit also took a similar approach in U.S. v. Husband, where the court indicated that, quote, any issue that could have been but was not raised on appeal is waived. That's where the court used the phrase that parties cannot use the, quote, accident of remand as an opportunity to raise waived issues. Judge Rendell, I believe your question earlier touches on that point. If we look at the issue in Beezer 2, and if we go back in time and hypothetically assume that that equitable allocation hearing had been conducted by the district court, the equitable allocation hearing would have been proper, there would have been no need to remand the case, and at that point in time, the case would be over. And that's decided well in advance of the Cooper decision. And in essence, what Meade is seeking to do here is use the pure accident of remand to provide it with a benefit not available to other parties. The GenCorp decision recently decided by the 6th Circuit, and it's discussed in our brief, is directly on point on this issue. And it is important to note that while the procedural mechanism was a Rule 60B motion, that case was alive before the district court. That case was remanded to the district court and was live before the district court. At that point in time, the one party filed a Rule 60B motion, which is not dissimilar in any respect to the motion that Meade has filed in this case, because judgment was previously entered on the 113 issue. It was not appealed from, the summary judgment in Beezer's favor. And the court in GenCorp ruled that the court would not consider the civil action issue on remand because the party had waived appellate consideration of that argument, which is exactly what Meade did in this case. They had every opportunity to appeal the civil action issue, and they failed to do so. Do you concede the civil action argument would still apply? Or do you concede that you had no civil action involved in this case? We clearly did not have a lawsuit filed against us by the EPA. There is an open question that the U.S. Supreme Court noted in Cooper as to whether an administrative order satisfies the requirements of a civil action. Interestingly, though, and I did want to touch on the second component of this case, and that is Beezer's 107 claim. Clearly, Beezer has a viable 107 claim following Atlantic Research. And Meade's argument in the supplemental letter briefs that they submitted is that Beezer was obligated to appeal what they deem as a dismissal with prejudice following the summary judgment. We fundamentally disagree that the dismissal was with prejudice. To the contrary, it was not on the merits. The district court merely indicated that it was dismissing the 107 claim because it was duplicative of the 113 claim. And there is not, as I indicated earlier, a final judgment on Beezer's 107 claim as we stand here today. That having been said, then, if it were to be remanded, does your 107 claim have to be resuscitated in some fashion? The court relied on DuPont, and since then we have the Atlantic Research. Does that provide authority for reviving or resuscitating the 107 claim? Absolutely, Your Honor. And furthermore, the court would simply need to remand the case for an equitable allocation hearing under 107 because there is record evidence that is beyond dispute that Beezer satisfies the prerequisites for a 107 claim. It is brought in action against PRP, against a PRP, which Meade has clearly been demonstrated to be, and Beezer has clearly incurred response costs. And that's an important distinction. While the court in Atlantic Research discusses the statute, the most important point in both Atlantic Research and Cooper is the text of CERCLA. That is the defining thread through both of those decisions. And while Meade attempts to argue that Beezer does not have a viable 107 claim because it did not voluntarily incur response costs, that distinction is made nowhere in Atlantic Research. If there's one thing that Atlantic Research tells us, it is the court will look at the text of CERCLA, and nowhere in the text of 107 is the requirement that those costs be incurred voluntarily. It simply says any party, other than the government or an Indian tribe, who incurs response costs can bring a claim for cost recovery against any other party. And if you go back, it's interesting because back in 1996, the magistrate judge addressed that very point. And in order, and this is in the appendix at page 863, the magistrate judge noted, quote, there is no language in 107 which limits its applicability to innocent parties or to those who voluntarily engage in cleanup activities. There is simply no basis in the text of CERCLA to limit 107 claims to those who voluntarily incur costs. I did want to touch as well on the intervening decision doctrine, and Judge Rendell, you addressed that point during Meade's primary argument. The key points there, when you look at an intervening decision,  where the intervening decision reverses an earlier line of precedent. That is not the case here. The civil action issue had not been definitively ruled upon by this court prior to Meade's appeal in Visa II. That was an open issue that certainly could have been raised on appeal by Meade. Furthermore, this court has previously addressed the intervening change in the law doctrine and its relationship to the mandate rule in its 1994 Planned Parenthood decision, where this court noted that an intervening change in law is, quote, necessarily cabined by the mandate rule. The court went on to note that they have not found any case in which a change of controlling law was made and applied by an appellate court was treated as an intervening change in law to justify the trial court's absent direction from the appellate court to do so. In this case, this court's remand in Visa II was very clear. It remanded this case back to the district court with specific instructions for the district court to conduct an equitable allocation hearing before that district court. That's it. Liability had been determined. It was determined long ago. It was not raised on appeal, and it was not part of this court's remand. The cases that Meade relies upon to support its position, there are all enormous distinctions, the most controlling of which is none of them involve waiver, which is exactly what the district court relied upon and what this court should rely upon to remand this case back to the district court with the same instruction it issued in Visa II, which is instructing the district court to conduct an equitable allocation hearing. Thank you. If there are any further questions, I'd be happy. Thank you. Judge Weiss, first getting back to your point, you asked where the Supreme Court had ruled that a lawsuit was required. In Atlantic Research, the post-Cooper decision, they held, and I quote, in Cooper Industries, we held that a private party could seek contribution from other parties only after having been sued under Section 106 or Section 107A. Yes, I noticed that word sued, and I wondered if the Supreme Court knew what it was saying. I believe it did pretty clearly having been in front of them on the Cooper case below. They understood what a lawsuit meant. Okay. Second, the appeal that we made in Visa II was of all of the matters that were unresolved at the time of the errant referral to the magistrate. Even the district judge here, when looking back at this during the argument below, looked at his own orders and came to the conclusion that there was no direct decision on 113F1. He said it must be inherent in the decisions or implied or implicit. And I would suggest that does not meet the standard of a direct ruling, for example, as held by this court in the United States versus Bridge. If a court order doesn't clearly address and decide an issue, it would be unfair that a party's failure to appeal that decision forever waives its right to challenge. If there's any implicit decision here on the 113F1 statutory prerequisite, it has to arrive from proceeding before the magistrate here, since he had expressly reserved the issue before. The judge's 1996 order doesn't address it, and it adopts everything in the magistrate's report that wasn't directly overruled. Under that standard, if something came out of here, an implicit or implied ruling on the 113F1 issue, it could only have happened during the errant magistrate's referral. And it is just as void as anything else, whether it was objections made to the magistrate over evidentiary issues or testimony that came in or anything else. It was an errant referral. That was reversed. We are now back to the point before that errant referral was made and ready to proceed. If you look carefully at the order that Judge Diamond issued, he only said that Deeser had established the 107A statutory prerequisites, allowing it to proceed or maintain a 113F1 claim. He didn't directly address the issue that we had put before him, so it was back before the magistrate, and we're rolled back to that point. What if the Supreme Court had not decided this case, but you woke up one day and said, oh, you know what, I think I'm reading the statute again, and I think there's been no civil action here. I want to file a motion for judgment on the pleadings today, absent the Supreme Court ruling. Do you think the court would have found that you had waived the argument and could properly have found that? If we were going back from this court's reversal of the magistrate referral and the other issues that were addressed in Deeser II, back to the point of referral, we would have again reasserted and pursued the 113F1 issue that had never been clearly decided before a legitimate moral. And you think the court then should have said, oh, of course, I should have thought of that in the first place. Come right in, let's throw out the pleading. It's part of the proceeding. You have to remember here, the only motion that was pending here when the judge took this on was Meade's motion for summary judgment. Deeser had no affirmative motion for summary judgment pending in 1995 and 1996. It didn't seek relief that it had permanently satisfied the 113F1 standard. The only motion was the pending unresolved motion of Meade that they didn't satisfy that requirement. We pursued it. And when you have a tainted referral like this, whatever is implied or implicit in it, whether it's legal decisions that haven't yet been rendered or evidentiary decisions, those are void. We are back to the starting point of the errant referral here. Let me ask you something that's been kind of bothering me. This essentially is a claim under surplus. Does it really make a difference which section of the statute is cited? Can we get the court to switch back and forth between the two sections and see if either or both of them apply? I think that parties in this practice area believe there's a huge difference between the two sections, and they've worked hard to perfect the ability to bring a 107 claim. Yes, I recognize that. You have a different statute of limitations. You have a different burden of proof. You essentially put joint and several liability on one party and forced them to approve a reduction in the 100 percent share. There are a lot of reasons that one would prefer to go there, and if you have other parties in orphan shares, you run the risk under a traditional contribution standard application that a defendant may be forced to bear the burden of the orphan share if, in fact, a 107 claim is available. There's substantial differences. I've been in the circuit many times in the past and it certainly deserves its reputation of being one of the most poorly drafted statutes. I did want to just touch on the 107 question because Mr. Jameson suggested there wasn't a ruling on the 107A issue. That just isn't true. There's a direct ruling that there is no 107A claim here. They are an aggrieved party. They made the practical decision to accept half a loaf of 67 percent allocation, and in their own words, they chose not to appeal the dismissal of their 107 claim. In the oral argument before Judge Diamond, that was their exact word. They chose not to appeal. Wasn't there controlling authority to the contrary? Wasn't there controlling authority? I think there's always authority, but if somebody wants to pursue even against the grain of trending, if they want to pursue the ability, once they choose to litigate it, that is, they bring the motion for summary judgment, they litigate it and they get to a judgment on the issue. They have to appeal that to keep it alive. What you'll see is in ITT and in the other cases, those are cases where people were still appealing the dismissal of their 107A claim. That's why they were alive. That's why it was alive in the other actions. DuPont is distinct because DuPont took the other course. It voluntarily chose to dismiss its 107 claim without prejudice until there had been a resolution at another stage. When it came back, it was open before this court to go back and reconsider. They took the other course. Make no mistake. Beezer chose to litigate and lose on the 107A issue and then made a practical decision not to appeal that. Thank you. Thank you, counsel. The case was well argued. We'll take it under advisement and ask the clerk to recess court.